**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE DE ANGELIS,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No.  2:17-cv-924 |
| v. | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **NATIONAL ENTERTAINMENT GROUP, LLC,** | : | |
| | : | Magistrate Judge Deavers |
| | : | |
| Defendant. | : | |

## OPINION AND ORDER

This matter is before the Court on Defendant National Entertainment Group, LLC, d/b/a Vanity ("Vanity")'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 6) and Plaintiff Stephanie De Angelis' Motion for Judgment on the Pleadings (ECF No. 11). For the reasons stated below, Vanity's Motion (ECF No. 6) is **DENIED** and Ms. De Angelis' Motion (ECF No. 11) is **GRANTED.**

### I. BACKGROUND

Vanity is an adult entertainment club in Columbus, Ohio.  (ECF No. 1 at ¶ 3).  Ms. De Angelis alleges that she worked at Vanity as a dancer from April 2016 to February 2017.  (*Id.* at ¶¶ 16, 18).  Ms. De Angelis alleges that Vanity did not pay its dancers any wages.  (*Id.* at ¶ 1). Instead, she avers that Vanity misclassified all of its dancers as independent contractors, rather than employees, and that the dancers are only compensated through tips from customers.  (*Id.* at ¶¶ 17, 21).  She further alleges that at the end of each night, Vanity took a cut from all tips made by the dancers, and the dancers were required to split their tips with other employees.  (*Id.* at ¶¶ 5, 29).

Ms. De Angelis filed this lawsuit as a collective and class action against Vanity on October 23, 2017, alleging violations of the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act ("OMFSWA"), O.R.C. §§ 4111.01, *et seq.*, and the Ohio Semi-Monthly Payment Act, O.R.C. § 4113.15, as well as common law unjust enrichment by failing to pay dancers minimum wage for all hours worked, including failure to pay overtime. (ECF No. 1). On January 2, 2018, Vanity answered the Complaint and brought counterclaims against Ms. De Angelis for breach of contract and unjust enrichment. (ECF No. 7). The same day, Vanity filed a Motion to Dismiss for Lack of Jurisdiction, arguing that Ms. De Angelis never danced at Vanity, and therefore does not have standing to bring the instant lawsuit. (ECF No. 6). On January 24, 2018, Ms. De Angelis filed a Motion for Judgment on the Pleadings on the counterclaims. (ECF No. 11). On August 10, 2018, this Court held an evidentiary hearing to determine for purposes of standing whether Ms. De Angelis danced at Vanity. (*See* ECF No. 33). The Motion to Dismiss and Motion for Judgment on the Pleadings are now both ripe for decision.

## II. VANITY'S MOTION TO DISMISS

### A. Standard of Review

As this Court previously determined, Vanity brings a factual attack on subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 31). Factual attacks challenge the factual existence of subject matter jurisdiction. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). In other words, a party making a factual attack "challenges the actual existence of the jurisdiction even though the complaint contains the formal allegations necessary to invoke jurisdiction." *Doe v. DeWine*, 99 F. Supp. 3d 809, 815 (S.D. Ohio 2015). In reviewing a factual challenge, no presumptive truthfulness applies and the trial court "is free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie,* 15 F.3d at 598. The district court "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In this review, the district court "has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* Plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *Doe v. Dewine*, 99 F. Supp. at 809.

### B. Analysis

Vanity argues that Ms. De Angelis never danced at Vanity, and therefore does not have standing to bring the instant lawsuit. (ECF No. 6 at 4-6). Standing is a threshold inquiry in every federal case. *Jet Courier Servs., Inc. v. Fed. Reserve Bank of Atlanta*, 713 F.2d 1221, 1225 (6th Cir. 1983). The "gist of the standing question is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness upon which the court so largely depends for illumination of difficult . . . questions." *United States v. Richardson*, 418 U.S. 166, 173 (1974). The party invoking federal jurisdiction—here, Ms. De Angelis—bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

In the Sixth Circuit, a plaintiff must meet Article III standing requirements and prudential standing requirements in order to proceed with her case. *McGlone v. Bell*, 681 F.3d 718, 728–29 (6th Cir. 2012). To satisfy the constitutional requirements for standing, plaintiff must show she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560-61). To establish prudential standing requirements: "(1) a

3

plaintiff must assert [her] own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question." *McGone*, 681 F.3d at 729.  While Vanity does not argue with any specificity which of the standing requirements Ms. De Angelis would not satisfy if she, in fact, never danced at its club, in setting the evidentiary hearing, the Court held that if she did not ever perform at Vanity, Ms. De Angelis could not meet the first constitutional requirement: she could not show that she suffered an injury in fact. (ECF No. 31).  The Court determined that it thus must hold a hearing and weigh the evidence to determine if Ms. De Angelis ever worked at Vanity.

After weighing the evidence, the Court determines that Ms. De Angelis has presented sufficient evidence at this stage to meet her burden of showing that did, indeed, have some relationship with Vanity, such that she has "a personal stake in the outcome of the controversy as to warrant [*her*] invocation of federal-court jurisdiction." *Providence Baptist Church v. Hillandale Comm., Ltd.,* 425 F.3d 309, 318 (6th Cir. 2005) (emphasis in original).  At the hearing, Ms. De Angelis testified that she was an exotic dancer at Vanity from approximately April of 2016 to February of 2017. (*See* Transcript of August 10, 2018 Hearing ("*Tr.*")).  Ms. De Angelis gave details regarding her audition at Vanity, including that it was in the early evening on a weekday and that she wore unique heels that are neon blue in the black light. (*Tr.*).  She testified about the layout of Vanity, and drew a rough sketch showing the distinctive shape of the main stage and the location of an individual stage, that she described as peculiar to Vanity. (*Id.*).  Ms. De Angelis testified about the last time she danced at Vanity in 2017, explaining that it was very slow at Vanity so she left to work at Scores, another club next door, and did not feel that it was fair to have to pay

4

fees at Vanity since she had not worked. (*Id.*). At the conclusion of her direct testimony, Ms. De Angelis testified that she "definitely remember[s] working" at Vanity. (*Id.*).

Vanity, on the other hand, presented the testimony of its General Manager, Mr. Kenneth Kopras, who also submitted an affidavit in support of the Motion to Dismiss. (*Tr.*, ECF No. 6-7). Mr. Kopras testified that he has worked at Vanity for just over fifteen years, and has been the general manager for thirteen years. (*Tr.*). Mr. Kopras testified that he did not recognize Ms. De Angelis as a person who has ever danced at Vanity, and he works with all of the dancers there. (*Tr.*). He also stated that Vanity has its dancers complete an initial application and a dancer's agreement, and provide a valid state/government issued identification, and Vanity went through their paperwork for entertainers and could not find anything with Ms. De Angelis' name on it. (*Id.*; ECF No. 6-7 at ¶ 3).

While the Court does not doubt the veracity of Mr. Kopras' statements, merely because he does not recognize Ms. De Angelis and the club could not find her paperwork does not mean that Ms. De Angelis never danced at Vanity. Ms. De Angelis, who performed under the stage name "Zoe," could have appeared differently in her stage costumes and makeup, causing Mr. Kopras not to recognize her in a photograph or in court. Ms. De Angelis also testified that Vanity was one of her "off clubs" and that other girls worked at the club longer and had more privileges, so Mr. Kopras simply could have been less familiar with her than he was with more regular performers. As for the paperwork, Ms. De Angelis argued that it is not surprising that Vanity did not have paperwork on her, given that one of her claims in the case relates to failure to maintain proper records. (ECF No. 9 at 7). In any event, merely because they could not find the paperwork does not mean it did not exist at one point or that Ms. De Angelis did not still dance there in the absence of paperwork.

5

The Court finds no reason to discredit Ms. De Angelis' testimony that she did, in fact, dance at Vanity, and her testimony is sufficient to find jurisdiction at this stage. The Court acknowledges that Ms. De Angelis did not recall with 100% accuracy all of the details of Vanity's operations. For example, she testified that she did not recall exactly how to get to the locker room, and stated that the club was only one floor to the best of her knowledge. (*Tr.*). Mr. Kopras, however, testified that Vanity's locker room is in the basement. (*Id.*). Ms. De Angelis testified that she worked at a number of different clubs during the same time period and because of that "some of the details get confused." (*Tr.*). The Court finds this explanation to be understandable— Ms. De Angelis listed at least seven clubs that she danced at during the same time frame, and testified that it is common in the industry to dance at multiple clubs, which Mr. Kopras acknowledged in his testimony as well. (*Id.*). It is reasonable for a dancer who works at so many clubs to confuse some of these details. At the end of the day, Ms. De Angelis was able to recall correctly numerous details, including that the lockers in said locker room were gray, which Mr. Kopras confirmed. The Court is satisfied that Ms. De Angelis danced at Vanity, at least on occasion. She thus alleges an injury that is personal to her and has standing to bring suit.[1]

### III. MS. DE ANGELIS' MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. Standard of Review

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule

---

[1] The Court expresses no opinion on whether Ms. De Angelis was an employee or an independent contractor.

12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's decision."). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Analysis

Defendants bring two counterclaims against Ms. De Angelis: (1) a breach of contract claim for breaching the financial compensation terms of the independent contractor agreement contingent on Plaintiffs' success in the lawsuit and Defendants being required to pay them additional compensation; and (2) an unjust enrichment claim in the alternative to its breach of contract claim. (ECF No. 7 at 7). Both of these counterclaims are contingent on Ms. De Angelis' success in the lawsuit and this Court finding that the dancers are employees rather than independent contractors. (ECF No. 15 at 7). Ms. De Angelis argues that the counter claims are impermissible because to entertain such claims would undermine the statutory protections of the FLSA. (ECF No. 11 at 9-11).

In *Wagoner v. N.Y.N.Y., Inc.*, this Court confronted the same question at issue here. No. 1:14-CV-480, 2015 WL 1468526 (S.D. Ohio Mar. 30, 2015) (Barrett, J.). Plaintiff worked as an exotic dancer at defendant's adult entertainment club and filed a class and collective action

7

asserting claims for violations of the FLSA and the OMFWSA. *Id.* at *1. Defendant filed two counterclaims: (1) a breach of contract claim alleging that plaintiff breached an agreement to perform as an independent contractor by retaining dance fees while claiming to be employees; and (2) an unjust enrichment claim alleging that the dancers benefitted from retaining revenue, among other things. *Id.* at *2. Plaintiff brought a motion to dismiss the counterclaims, arguing that defendant's theory for breach of contract and unjust enrichment are "legally impermissible because they improperly seek to circumvent the requirements of the FLSA and OMFWSA." *Id.* at *6.

The *Wagoner* court agreed. In analyzing the breach of contract claim, the court reasoned that "individuals may not contract away the right to be classified and compensated properly or the right to be free from retaliation for enforcing those statutory rights." *Id*. The court found that the FLSA is designed to defeat rather than implement contractual agreements, and that allowing the recovery of dance fees "would be antithetical to the long-standing principles of the FLSA and its state law counterpart, as the protection afforded by the contract fall short of that provided by those wage laws." *Id.* The court stated that the labels employers place on the employment relationship or the nature of the monies received by the workers are not binding, and that such determinations are reserved for the courts. *Id.* Thus, the *Wagoner* court held "that the provisions of the contract upon which Defendant rely for the breach of contract counterclaim are invalid because they operate as impermissible waivers of the dancers' rights under the federal and state wage laws," and dismissed the claim for failure to state a claim upon which relief could be granted. *Id.* The court went on to find that the unjust enrichment claim must be dismissed for the same reasons—it was premised on the same arguments as the breach of contract counterclaim and to allow it to continue would be to allow defendant to circumvent the "comprehensive and uniform wage schemes that

are intended to protect all individuals performing covered work, and would undermine the deterrent role of the FLSA and its state counterpart." *Id.* at 7.

This Court sees no reason to depart from the holding in *Wagoner* and finds its reasoning to be persuasive. Indeed, the Supreme Court has held that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal citations omitted). Allowing the Defendants to bring a breach of contract claim (or an unjust enrichment claim premised on the same argument) for breaching an agreement that incorrectly labels employees as independent contractors would thwart the legislative purposes of the FLSA. To be clear, the Court is not making a judgment at this stage that the agreement purporting to classify dancers as independent contractors is invalid, that such an agreement is an attempt to thwart the FLSA, or that dancers are more properly characterized as employees. Defendants' counterclaims are both contingent on Ms. De Angelis being successful in the lawsuit, and thus would only come in to play after the court would make such a finding. If the Court did indeed make such a finding, the counterclaims would not be permissible. Thus, they must be dismissed for failure to state a claim.[2]

Defendants argue that *Wagoner* is distinguishable because "[r]ather than finding a failure to state a cognizable claim, the Court in *Wagoner* declined to exercise supplemental jurisdiction over the defendant's contractual counterclaims in that case." (ECF No. 15 at 14). Contrary to Defendants' contention, the *Wagoner* court did the exact opposite: the court expressly exercised supplemental jurisdiction over the counterclaims and then dismissed the counterclaims for failure to state a claim upon which relief can be granted. 2015 WL 1468526, at *6 ("[T]he Court finds it

---

[2] Because the Court finds that the counterclaims are impermissible as a matter of law, it need not address Ms. De Angelis' remaining arguments.

appropriate to exercise supplemental jurisdiction over [the counterclaims] here."); *id.* ("The Court agrees with Plaintiff that the counterclaims fail to state a claim upon which relief may be granted."). Defendants' arguments are therefore unpersuasive.[3]

### IV. CONCLUSION

For the reasons set forth above, Vanity's Motion to Dismiss (ECF No. 6) is **DENIED**. Ms. De Angelis' Motion for Judgment on the Pleadings as to Vanity's counterclaims (ECF No. 11) is **GRANTED**.

**IT IS SO ORDERED.**

<u>s/Algenon L. Marbley</u>
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED: September 11, 2018**

---

[3] The Court notes that Defendants still have a defense for set-off, arguing that they are entitled to offset the amount of fees, tips, and other compensation dancers received against any minimum and overtime wages owed. This issue "is reserved for a future ruling after further development of the factual record given that it is not pertinent to the resolution of the motion presently before the Court." *Desio v. Russell Rd. Food & Beverage, LLC*, No. 215CV01440GMNCWH, 2016 WL 4721099, at *1 (D. Nev. Sept. 9, 2016).