# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| STEPHANIE DE ANGELIS, | : |
| Plaintiff, | : |
| | : Case No. 2:17-cv-924 |
| v. | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| NATIONAL ENTERTAINMENT GROUP, LLC, | : |
| | : Magistrate Judge Deavers |
| Defendant. | : |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Stephanie De Angelis' Motion for Conditional Class Certification, Expedited Discovery, and Issuance of Notice (ECF No. 44). For the reasons stated below, Plaintiff's Motion is **GRANTED.**

## I. BACKGROUND

National Entertainment Group LLC (**"**Vanity") is an adult entertainment club in Columbus, Ohio. (ECF No. 1 at 2). Ms. De Angelis worked at Vanity as a dancer from April 2016 to February 2017. (*Id.* at 5; ECF No. 39). Ms. De Angelis alleges that Vanity did not pay its dancers any wages by misclassifying all of its dancers as independent contractors, rather than employees. *Id*. She further alleges that at the end of each night, Vanity took a cut from all tips made by the dancers, and the dancers were required to split their tips with other employees. *Id.* at 3, 6.

Ms. De Angelis filed this lawsuit as a collective and class action against Vanity on October 23, 2017, alleging violations of the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act ("OMFSWA"), O.R.C. §§ 4111.01, *et seq.*, and the Ohio Semi-Monthly Payment Act, O.R.C. § 4113.15, as well as common law unjust enrichment by failing to pay dancers minimum wage for all hours worked, including failure to pay

overtime. (ECF No. 1). On January 2, 2018, Vanity answered the Complaint and brought counterclaims against Ms. De Angelis for breach of contract and unjust enrichment. (ECF No. 7). The same day, Vanity filed a Motion to Dismiss for Lack of Jurisdiction, arguing that Ms. De Angelis never danced at Vanity, and therefore does not have standing to bring the instant lawsuit. (ECF No. 6). On August 10, 2018, this Court held an evidentiary hearing to determine for purposes of standing whether Ms. De Angelis danced at Vanity. (*See* ECF No. 33). On September 11, 2018, this Court issued an order denying Vanity's Motion to Dismiss for Lack of Jurisdiction and determining that Ms. De Angelis did work at Vanity. (ECF No. 39).

Plaintiff thereafter filed a motion for conditional class certification also requesting expedited discovery and issuance of notices to prospective class members. (ECF No. 44). Vanity opposes Plaintiff's motion arguing: (1) that Plaintiff has failed to submit adequate evidence in support of her motion and that the affidavit she has submitted is conclusory boilerplate; (2) that Plaintiff's testimony at the hearing contradicts her affidavit; and (3) Plaintiff is not similarly situated to members of the proposed class because she did not sign any agreements with Vanity and "actual Vanity dancers" are required to sign agreements that contain an arbitration clause. (ECF No. 45).

## II. STANDARD OF REVIEW

The Fair Labor Standards Act requires employers to pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). Congress's primary purpose in enacting the FLSA "was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324

2

U.S. 697, 707 n.18 (1945)). The FLSA "was enacted by Congress to be a broadly remedial and humanitarian statute," *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977), and in interpreting the FLSA the Supreme Court has long noted that the statute attempted to mitigate the effects of the "unequal bargaining power . . . between employer and employee," *Brooklyn Sav. Bank*, 324 U.S. at 706. Due to the "remedial nature of this statute," the employee's burden "of proving that he performed work for which he was not properly compensated" should not be made "an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014).

The FLSA provides that a court may certify a collective action brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated employees are permitted to "opt into" the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The lead plaintiffs bear the burden to show that the proposed class members are similarly situated to the lead plaintiff. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). The FLSA does not define "similarly situated" and neither has the Sixth Circuit. *Id.* But notably, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than plaintiffs seeking class certification under Federal Rule of Civil Procedure 23. *Id.* In FLSA class actions, "class certification typically occurs in two stages: conditional and final certification." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (unpublished).

At the conditional-certification stage, conducted at the beginning of the discovery process, named plaintiffs need only make a "modest factual showing" that they are similarly situated to

3

proposed class members. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015) (quoting *Comer*, 454 F.3d at 547). The standard at the first step is "fairly lenient . . . and typically results in 'conditional certification' of a representative class." *Comer*, 454 F.3d at 547 (internal citations ommitted). Courts generally consider factors such as "employment settings, individual defenses, and the fairness and procedural impact of certification." *Frye*, 495 F. App'x at 672 (citing *O'Brien*, 575 F.3d at 584). Plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Showing a "unified policy" of violations is not required. *Id.* at 584. The named plaintiff "need only show that [her] position is similar, not identical, to the positions held by the putative class members." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867-68 (S.D. Ohio 2011); *see also Comer*, 454 F.3d at 546-57.

At this stage, a court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner*, 110 F. Supp. 3d at 765 (citing *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011)). In determining conditional certification, courts have considered "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014) (quoting *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)). If conditional certification is granted, "plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015).

At the final certification stage, conducted after the conclusion of discovery, courts "examine more closely the question of whether particular members of the class are, in fact,

similarly situated." *Comer*, 454 F.3d at 547. At this stage, the court has much more information on which to base its decision of whether the proposed plaintiffs are similarly situated and, "as a result, it employs a stricter standard." *Id.* (alteration, quotation marks, and citation omitted).

### III. ANALYSIS

#### A. Conditional Certification

Plaintiff seeks to certify a class of:

> "All of Defendant's current and former dancers who have worked at Defendant's club during the three years before this Complaint was filed up to the present"

(ECF No. 44 at 15-16). Defendant argues that Plaintiff has failed to submit adequate evidence that she is similarly situated to putative class members and that Vanity had a common plan or scheme affecting her and other dancers. (ECF No. 45 at 5-7). Typically, the standard of review at the conditional certification stage is lenient. *Comer*, 454 F.3d at 547. Defendant, however, urges this court to use a heightened "hybrid" standard requiring Plaintiff to make a "modest plus factual showing that there is a group of potentially similarly situated plaintiffs." (ECF No. 45 at 2-3). Defendant claims this heightened standard is warranted because of the August 10, 2018 evidentiary hearing and because Plaintiff has "propounded written discovery requests and requests for admission." ECF No. 45 at 2. Defendant does not indicate whether it has responded to those requests or issued any of its own discovery requests.

The Sixth Circuit has not touched upon the issue of what standard to use for conditional class certification motions when limited discovery has been conducted and has only approved of a two-stage approach for certifying FLSA collective actions. *See e.g., Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671-72 (6th Cir. 2012). District courts in this circuit have determined that a hybrid standard is appropriate when discovery has taken place on the question of conditional certification but disagree as to the extent of the discovery triggering a heightened standard. *See*

5

*Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 766 (N.D. Ohio 2015) (determining that heightened hybrid standard is only warranted where "substantial discovery on the question of conditional certification has already taken place."); *Neff v. U.S. Xpress, Inc.*, 2:10-CV-948, 2013 WL 4479078, at *3 (S.D. Ohio Aug. 20, 2013) (determining that "when plaintiffs have had the opportunity to conduct at least limited discovery on the certification issue, the plaintiffs are required to make a showing beyond their original allegations") (internal quotation marks omitted). Under the hybrid standard, "the court entertains many of the factors usually reserved for the second stage, including disparate factual and employment settings and various defenses available to the employer, and considers the evidence from both plaintiff and defendant." *Waggoner*, 110 F. Supp. 3d at 766. Additionally, the extent of discovery taken is considered "in conjunction with Defendants' evidence and in the context of Plaintiffs' unshifting burden to prove their claims." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011).

Since substantial discovery relating to the issue of class certification has not been conducted, application of the heightened standard is inappropriate. The evidentiary hearing conducted on August 10, 2018 was for purposes of jurisdiction—to determine whether Plaintiff worked at Vanity—and not related to the issue of class certification. See *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 766 (N.D. Ohio 2015) (determining application of heightened standard was inappropriate where both parties were not given "considerable time to develop the record" on the "similarly situated" issue before the court's ruling on conditional certification). Further, while Defendant claims that Plaintiff has made discovery requests, it does not allege that the discovery sought was actually provided, was related to the issue of conditional certification, or that it was substantial. Thus, application of a heightened standard is inappropriate.

Even if this Court were to employ a heightened standard, Plaintiff has met the "modest-plus" standard. *See Hall v. U.S. Cargo and Courier Serv., LLC*, 299 F. Supp. 3d 888, 896 (S.D. Ohio 2018) (conditionally certifying class of delivery truck drivers alleging they were impermissibly classified as contractors under a heightened "modest plus" standard determining that plaintiffs had made the requisite factual showing through "declarations stating that they and the putative class members' claims are unified by a common theory—that they have been misclassified as independent contractors when they were indeed employees."). In *Hall*, plaintiffs alleged that they were misclassified as contractors and not employees even though they were required to wear a uniform purchased through a specific supplier, comply with Defendant's grooming standards, and received their routes directly from defendant. Here, Plaintiff has presented an affidavit detailing her experience as a dancer at Vanity which indicates that she was required to sign a document classifying her as an independent contractor, that Vanity maintained policies and pay structures that applied to herself and all dancers, that Vanity maintained a dress code and etiquette guidelines, and that Vanity determined what services dancers would offer. ECF No. 44-2.

As other courts have observed, where only some discovery has taken place, "arguably an incrementally higher standard applies, but it is not so substantially greater as to convert the question before the court to one involving a dispositive merits resolution of the issues at hand." *Kampfer v. Fifth Third Bank*, 3:14 CV 2849, 2016 WL 1110257, at *5 (N.D. Ohio Mar. 22, 2016) (internal quotation marks omitted) (citing *Stallard v. Fifth Third Bank*, 2:12-CV-01092, 2013 WL 12308493, at *1 (W.D. Pa. Dec. 12, 2013)). All that is required of a court employing the intermediate standard is to "weigh the sufficiency of affidavits against any competing evidence produced in the targeted discovery period." *Watson v. Adv. Distrib. Services, LLC*, 298 F.R.D.

558, 562 n.3 (M.D. Tenn. 2014). Defendant claims that Plaintiff's testimony at the evidentiary hearing contradicts her affidavit because Plaintiff could not specifically state what Vanity's policies or practices were and because Plaintiff's vague testimony supports Defendant's assertion that Ms. De Angelis "never even danced at the club." ECF No. 45 at 8-11. However, after listening to the testimony taken at the evidentiary hearing, this Court has already determined that Ms. De Angelis worked at Vanity. Moreover, much of the testimony made during the evidentiary hearing supports the contentions made in Ms. De Angelis's affidavit. The defendant's own witness in the evidentiary hearing, Vanity general manager Kenneth Kopras, stated that all dancers were required to sign a dancer agreement, that dancers were paid in tips and required to split those tips, that Defendant sets and controls pricing and location of all table dances. (*See* ECF No. 38 at 65-66, 76-78). Nonetheless, this Court declines to resolve these factual disputes at this time. All that is required at this stage is that Plaintiff make a factual showing that she is similarly situated to potential class members. *See Hall*, 299 F. Supp. 3d at 896 (citing *Comer*, 454 F.3d at 546-47).

Defendant argues that this court should refuse to certify a class of dancers for the overtime claims because Ms. De Angelis stated during the evidentiary hearing that she never worked more than 40 hours a week at Vanity. (ECF No. 45 at 16). A court is entitled to refuse to certify conditionally a class of plaintiffs based on overtime claims where the representative plaintiff testifies that plaintiff never worked more than 40 hours a week. *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013) (denying in part motion to conditionally certify class for overtime claims where one of the representative plaintiffs was employed to work part time and testified that he never worked more than 40 hours a week). Defendant cites to a part of the hearing where Ms. De Angelis stated that she did not work more than 40 hours a week at Vanity. (ECF No. 38 at 20-21). At various other times during the hearing, however, Ms. De Angelis

stated that there were weeks where she worked five days and more than 40 hours at Vanity. *Id.* at 18, 23-24, 27, 28, 42-44. Ms. De Angelis described getting into Vanity around four in the afternoon on any given day and spending approximately two hours getting ready to begin dancing. *Id.* at 19. Her dancing shift would begin at six in the evening and end at 11, or if she came in later, she would begin at eight and was required to "stay the night and work the shift" ending when the establishment closed. *Id.* at 19-21. Though Ms. De Angelis, in her hearing testimony, did not characterize this time as work, her affidavit and the complaint indicate that Vanity had a dress code to which required all dancers to adhere and that she often did not enter or exit Vanity wearing her outfit. (ECF No. 1 at 5-6; ECF No. 44-2 at 2; ECF No. 38 at 9, 52-54). While there is a factual dispute as to how many hours Ms. De Angelis worked, there is not a demonstrable deficiency in Plaintiff's pleadings. Given the fact that the purpose of the evidentiary hearing was to determine whether Ms. De Angelis worked at Vanity and not whether she ever worked more than 40 hours a week, this court declines to resolve the factual dispute between the parties. After the taking of discovery and Ms. De Angelis' deposition, should there be evidence indicating that Ms. De Angelis definitively did not work more than forty hours at Vanity, Defendant may revisit this issue in a motion to dismiss the overtime claims or decertify the class.

Defendant also argues that Plaintiff is not similarly situated to members of the proposed class because she did not sign an agreement with Vanity and many Vanity dancers were required to sign an agreement containing an arbitration clause that would foreclose any class or collective claims. (ECF No. 45 at 12-14). According to Vanity, if a collective class is certified and some Vanity dancers opt in, "they may have signed agreements that require them to arbitrate any dispute with Vanity." *Id.* at 13. While it is true that an arbitration provision in an employment contract will

9

foreclose the possibility of class or collective action claims,[1] Vanity does not allege that all or most of its employees will be bound by such a clause—only a "portion." *Id.* at 13. Further, Vanity does not include a sample arbitration agreement or point to any evidence in the record that would support its assertion that Plaintiff is not similarly situated to members of the proposed class for this reason. Defendant's argument is a factual issue better addressed when parties attempt to opt in or at the decertification stage. After discovery has been taken, should the existence of signed arbitration agreements predominate within the proposed class, Defendant may raise the issue again.

Plaintiff has brought forward sufficient evidence that she is similarly situated to other dancers at Vanity and that she and other dancers were subjected to a single, FLSA-violating policy. Accordingly, this Court **GRANTS** Plaintiff's motion and conditional certifies a class of:

> All of Defendant's current and former dancers who have worked at Defendant's club during the three years before this order was granted to the present.

The parties are **ORDERED** to proceed with expedited discovery.

### B. Notice

Defendant takes issue with Plaintiff's opt-in form and the process for providing notification. (ECF No. 45 at 16). Defendant argues that much of the notice period is outside the statutory limitations period. *Id.* A lawsuit to recover unpaid compensation pursuant to the FLSA must "be commenced within two years after the cause of action accrued," unless the plaintiff demonstrates the cause of action arose "out of a willful violation," in which case the statute of limitations is three years. 29 U.S.C. § 255(a). An FLSA violation is "willful" if the employer either knew or showed reckless disregard that its conduct was prohibited by the Act. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966–97 (6th Cir. 1991) (citing *McLaughlin v. Richland Shoe Co.*, 486

---

[1] *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018)

U.S. 128, 133 (1988)). All that is required is that Plaintiff allege that Defendant's violation was a willful one. *Stout v. Remetronix, Inc.*, 3:13-CV-026, 2013 WL 4048241, at *5 (S.D. Ohio Aug. 9, 2013). Plaintiff has alleged that Defendant willfully violated the FLSA by misclassifying its dancers as independent contractors. (ECF No. 1 at 8). Although Plaintiff asks the Court to certify the class from the time of the three years preceding the filing of the complaint, collective-action certification is appropriately limited to the three years prior to the date of approval of the notice, not the filing of the lawsuit. *See, e.g., Crescenzo v. O-Tex Pumping, LLC*, 15-CV-2851, 2016 WL 3277226, at *5 (S.D. Ohio June 15, 2016); *Atkinson v. Teletech Holdings, Inc.*, No. 3:14–cv–254, 2015 WL 853234, at *3 (S.D. Ohio Feb. 26, 2015).

The Court **ORDERS** the parties to confer as to the proper form of the notice and submit a proposed notice form and opt-in consent form within fourteen (14) days of the date of this order. If the parties disagree as to any specific language in the notice and opt-in consent form, the parties may note the disputed language, with accompanying briefing as necessary, and the Court will promptly determine which language to use. At the same time, the parties shall also submit a proposed plan for the distribution of the notice to all potential opt-in plaintiffs employed by Defendant at any time from three years prior to the granting of this motion to the present. In the event of a disagreement on the distribution procedure, the parties shall submit simultaneous briefing on the matter. No responsive briefing will be permitted.

## IV. CONCLUSION

For the reasons set forth above, Ms. De Angelis' Motion for Conditional Certification and Expedite Discovery is **GRANTED**. The parties are **ORDERED** to confer and submit to this Court within fourteen (14) days a proposed notice and plan for distribution of notice.

**IT IS SO ORDERED.**

                                           **s/Algenon L. Marbley**
                                           **ALGENON L. MARBLEY**
                                           **Chief United States District Court Judge**

**DATED: December 10, 2019**